Thank you. Good morning. May it please the court. My name is Nate Nieman. I am here on behalf of Vincente Jimenes, who is currently serving a 151-month sentence in the Bureau of Prisons. The question presented originally in our brief has become somewhat narrowed, I think, throughout the course of the briefing with respect to first having to decide whether Mr. Jimenes could collaterally attack his conviction in the first place. And I think that in answering that question, it helps to take a look at the lineage of the cases that came to, ultimately concluded in the Arango Montoya case, which the government cites in support of its position that he wasn't able to attack that conviction. Well, and of course, we have the Supreme Court's decision in Custis against United States. We do, Your Honor. And the Custis decision came on the heels of Mitchell in this court. And Mitchell was decided in May 3rd of 94, and Custis was decided 20 days later on May 23rd. You also have Nichols, which was decided, and also has bearing on this case, which was decided on June 6th. But for your purposes, it really comes down to how much room Custis leaves to argue about, right? That's correct, Your Honor. I believe that Custis, while it basically holds that the only reason that you can collaterally attack a conviction at sentencing would be for a Sixth Amendment Gideon violation, I think should be expanded, or at least read to mean more than just simply having an attorney physically present with you when you plead guilty. But the court really didn't want to do that. As I Custis, it's, and if you look at Mitchell, you know, there's, I think, a hint to what they may have been concerned about in Custis. Mitchell talks about something that's plainly detectable from a facial examination. And if there's no lawyer at all, a Gideon violation, then that's very obvious from the record. The court doesn't need to go delving into things, doesn't need to worry about how effective anybody is. And obviously, we don't have a Gideon problem here, as I understand it, because he got just a misdemeanor, no incarceration. But I think that's one of the reasons why the court restricted Custis the way it did. I agree with Your Honor's statement of the law as far as what Custis holds. And the Nichols case kind of takes care of that issue with respect to a misdemeanor conviction. But what we're asking the court to hold in this case is that the right to counsel, as it is contemplated by Custis, includes a number of components or conditions precedent that are part of that bundle of rights, I guess you could say. But you agree that the fundamental question, even if you get over the plainly detectable, the fundamental question is still the right to counsel. It is. And while I think you raise an important question as to whether in the appropriate case an interpretation, an interpreter would be necessary to waive counsel, isn't your hurdle here that there was no right to counsel, period? Well, he had the right to counsel. Well, at the hearing, he had the right to counsel, even though because there was no ultimate jail sentence, there wasn't. I mean, I'm trying to make sense of the impression that ultimately there was no denial of counsel because it was a misdemeanor and he never faced jail time. Well, I believe, Your Honor, that he does have the right to counsel because I don't think the standard is... Because of potential jeopardy at the time of the original hearing. If we're already under a strict standard or a denial or plainly detectable denial and ultimately your client did not require counsel or at least had no right to counsel given the sentence in a misdemeanor case, is this really the case that we should be stretching to find a Gideon issue? Well, Your Honor, first of all, I do believe that he did have the right to counsel. Otherwise, he wouldn't have waived it. And I believe that the state of law in Illinois requires or allows a defendant who is facing  I think that that right does not extend to, for instance, Class C misdemeanors, Class D misdemeanors that do not carry the potential for jail time. But this was a Class A misdemeanor and it was punishable by up to one year in jail. So let me try a different angle here. I had thought you were arguing in part that just as fundamental to the right to counsel, the Gideon right is the right to have some basic understanding of what's happening to you in the courtroom and that if you don't speak the language that's being spoken in the courtroom, you might not even have that. But my problem with this particular case is under Custis and under the idea that any problem that exists needs to be very apparent from the transcript, I don't find it apparent from this transcript. There is, whoever they are, this unidentified speaker. I think the district court may have gone too far in saying it's obvious that he did have an interpreter, but it's not obvious that he didn't. And so I am not sure that your case raises the basic comprehension issue that I thought you were trying to suggest. Well, thank you, Your Honor. There's sort of two issues that are involved in your question. The first is that we are arguing that the right to counsel includes these other basic understandings that you have the right to counsel in the first place. Because if you don't know of the right, you really don't have one. But assume that's right. Okay. The point being that the record doesn't make clear that he either needed an interpreter or not. It's just unclear. There's an exchange off the record that presumably is in Spanish. Well, it's identified. It's a Spanish-speaking discussion was held off the record. So somebody who speaks Spanish is in the room. We really don't know if it's the defendant. Well, more importantly, we don't know what is being said. And the idea is not to have somebody sitting next to you that just speaks Spanish. It's also somebody that can translate. But again, you're assuming that it's the defendant who needed the assistance. That's correct. Let me take it a step further. Let's assume that we were to find it was ambiguous. Doesn't that underscore the decision that it was reasonable for the district judge to, as she did expressly, encourage the defense to go to state court following comment note six from guideline section 4A1.2 and attack this underlying state conviction directly in the state court? In other words, to seek relief where someone would know what happened. Well, in this case, I think that the district court notes how rare it is that there would be a transcript for this proceeding. I think that the district court was in a position to make a determination themselves without having to have a state court judge interpret the same transcript first. Or it could be the same judge. It could be. And with respect to the question of whether the record shows that there was any language difficulty by the interpreter, in my brief, I point to the very last exchange between the court and the unidentified speaker. And the court says, does he have any questions? And the unidentified speaker says, all right, thank you. And that, to me, indicates that the unidentified speaker, who is presumably translating these things between the court and defendant, doesn't have a basic grasp of English. Because if the court asks you, does he have any questions, the answer is either yes or no. It's not, all right, thank you. That, to me, indicates somebody that does not have a basic grasp of English. OK, your time has run out, Mr. Neiman. I think I'll give you a minute for rebuttal, if you would like. Thank you very much, Your Honor. Ms. Legge. Good morning, Your Honors. May it please the court, I am Catherine Legge, representing the United States. To be clear, Mr. Jimenez did not have the right to counsel constitutionally. That is very clear from the case law, that he had no right to counsel. What was his ultimate jeopardy at the high end of this misdemeanor? Was it a year of jail? Yes, Your Honor. He would face up to 364 days in county jail, at the maximum. But not 365? Correct. Which is your point? Correct. But I think, I thought the broader point was whether Custis is really as literally limited to the Gideon right as the government is saying. And if it's really the case, even for a misdemeanor, for which you can get 364 days in a jail, you can come in and listen to gibberish and have no idea what anybody's accusing you of, what's being said, and legitimately be taken off to the jail. It strikes me that there's a profound due process issue there. Well, we're talking about two different rights to counsel. There's a constitutional- I'm not talking about the right to counsel at all. I just told you I'm talking about- Due process. Due process. And I'm talking about the question whether Custis must be literally limited to the Gideon right, or whether Custis is saying instead, if there's a fundamental flaw in the proceeding that is apparent on the face of the record, such as there's no lawyer in the room, let's say in a felony case, where you would certainly have the right to a lawyer, or such as, you know, somebody whose only language is Mongolian, and there they are standing in a courtroom with a bunch of people speaking English at them. That wouldn't, in my view, come close to comporting with due process. This defendant certainly had a constitutional right through the due process clause to have interpretation. The Constitution, however, does not afford him the right to a court-appointed interpreter. So when you look at the record, Custis merely addressed- Are you basing that on Custis? In other words, Custis cuts off the right to an interpreter? Custis does not cut off the right to an interpreter. Or at least the right to challenge it on that basis. What Custis does is simply limit the constitutional challenges that a defendant may collaterally attack at a federal sentencing hearing to the right to counsel. But that's what I'm asking. Because the disturbing thing about reading through this transcript from the state court to me is that never do we even see this unidentified speaker communicating to the court that he's pleading guilty, that he's aware of what it is. There's this back and forth where everybody's interrupting everyone. And there's a Spanish-speaking discussion off the record. The court says they're dismissing the insurance in the headlamp. Unidentified speaker, yeah, he got. That's all it says. He got proof of insurance. There's nothing, not a word out of Mr. Jimenez's mouth that would indicate that he has any idea what he's pleading to. And that would be something that would be appropriate for a direct appeal through the state system. Those remedies were available to him. He would have been able to file a motion to vacate, appeal that order. But years later, when we are sitting at a federal sentencing hearing, the purpose of which is not to open the door to factual inquiries to the underlying convictions upon which the court relies. What Custis is saying is that constitutional violations that render something invalid must be limited to a federal sentencing court to only the question of the right to counsel. But that doesn't make any sense to me. I mean, it seems to me, of course, the right to counsel is a structural right. But so is the right to have some understanding of why you're there and what you've submitted yourself to. It seems to me the government's position is, no matter how flawed the prior conviction is, Custis shuts off the right to challenge the appropriateness of that commission for criminal, that offense for criminal history purposes. That is correct, Your Honor. That is our position, that there are other- Well, it may be your position, but does it really make sense? Take a more extreme situation. The person is on the transcript, the state transcript, supposedly has pled guilty to attempted murder. And the transcript doesn't even make clear that the defendant has entered a plea of guilty. In fact, it appears that- Let's make it even more stark, that the person doesn't understand English just by virtue of some of the comments he makes on the record. Does it make any sense at that point that there isn't some, as has been already suggested by the Chief, that there is, at that point, a fundamental due process right that ought to allow a judge sentencing to look at that and be at least skeptical, if not deny, whatever points are assigned under the guidelines? Well, the defendant certainly has the constitutional right through the Due Process Clause in order to the interpretation. However- No, no, but you're saying even in that stark situation, Custis prevents the defendant from attacking that conviction to avoid the draconian effect that attempted murder would have under the sentencing guidelines. You're saying in the setting of using that as a prior conviction, relied upon at sentencing hearing. Correct. That is exactly what it's- It's not the right- Well, it's exactly your position, but it's pretty unsatisfying as an answer. But it's very clear from the record that he had an interpreter. What the question about whether that was- Are you talking about in this case? Yes. In this case, we don't have any idea what this person was saying. Usually when there's an interpreter, the transcript will reflect the interpreter communicating what the defendant is saying to the court. So in other words, a two-way exchange. Yes, it is not the most thorough transcript from the trafficking, I agree. Is it clear that, as suggested by the sentencing judge, Judge Darrow, that there is a right in Illinois to go back and vacate a sentence, even one as old as this one? Yes, Your Honor. A defendant has 30 days to file a motion to vacate or a year if they can show good cause in order to vacate a sentence. And then, of course, they have the rights to file appeals and then a state habeas. So if nothing else could have been good for a state habeas, but was it within a year of the conviction itself? In other words, did he have the ability in the state system to go back and vacate under the one-year rule? Yes, Your Honor. He had the ability and time. The timing was such that that one year was still available. Correct. I think that's right. This says November 21, 2012 for the state colloquy. And this is, well, it's four years later. I don't know. Under, if one year shuts it off, this is considerably longer than one year after the state proceedings. Well, if I may, as a former state prosecutor, oftentimes in the cases of these judges, if a prosecutor or parties revest themselves regarding the case, a state court judge can simply reopen it, even outside the bounds of the statutory motion to vacate. And is there a statute or a case that makes that clear that there's that much discretion? It would be an Illinois state statute. I don't have that. Sure. Understood. Sure. But your point is, regardless, you could still bring a writ to attack. Correct. I want to briefly touch on one of the questions posed earlier about why Custis narrowed its ruling to the right to counsel. I believe it's clear that there are other constitutional violations, such as ineffective assistance of counsel under Strickland versus Washington. There are issues with constitutional right to a knowing involuntary guilty plea under Boykin versus Alabama that Custis knew about and stated that those factual inquiries about the creative factual inquiry that would harm the administration of justice, and that the federal sentencing hearing would become a proceeding in which you're opening up cases from long ago with records that would be hard to obtain. Sure. No, I understand that. What I was questioning is whether the presence or absence of any kind of interpreter, never mind if it's a court-appointed interpreter, it's your sister, it's anybody else, isn't closer to the Gideon line, where you can just look at the record, you see, yes, there was an interpreter, no, there wasn't an interpreter, no complex factual inquiries, no performance standards, no prejudice, no issues that you would have in the other areas that you were alluding to. May I respond? Yes, please. It would be easier to be plainly detectable from the record, correct? However, we do not believe that the case law allows expansion to that. Okay. Thank you very much. And I agree to give you one more minute, Mr. Newman. Thank you. First of all, Mr. Jimenez cannot come in in state court and attack this. With a misdemeanor, you would have six months under the Illinois Post-Conviction Hearing Act to file your petition. Furthermore, you'd have to have standing, which would only last for the duration of a sentence, which is two years. So that expired prior to the sentence and hearing in this case. And that would be under which state act? The Illinois Post-Conviction Hearing Act, which would be the correct collateral attack mechanism for challenging the voluntariness of a guilty plea. Mr. Jimenez, is your argument that the interpreter was needed so he would be aware of the right to counsel? Yes. Well, I'm a little concerned about footnote two in your brief on the question whether you've waived this. The sentence is, defendant does not hear, does not argue here that his conviction was invalid due to being denied the right to counsel. That's from your brief. That's correct. Is it a possible waiver here of the issue that you present? Well, I think that the site that I cited for that proposition was the Nichols case, which stated that an uncounseled misdemeanor conviction for which the defendant did not receive a term of imprisonment could be relied upon to enhance the sentence. So it's not, you can't go in and just say, you know, just because a warm body is not standing next to the person that that's an invalid conviction. So what we're asking the court to do is to interpret that Sixth Amendment right to counsel to something more than just the literal requirement of having a lawyer there. And what we're asking for is to interpret the Sixth Amendment right to counsel to include at base, knowing that you have that right, because if you don't have that right, you cannot exercise it. So we would ask the... But you're not disavowing that statement you made there, are you? No. I mean, that's a complete sentence. There's no site in that sentence. That's a position of the taken in the brief, right? You do not argue that his conviction was invalid due to being denied the right to counsel. I mean, isn't that at core what you actually want? What we are saying is that the right to a counsel should extend beyond just having a mere lawyer there. So included in that right would be the right to have somebody tell you in your own language that you have that right. Okay. Thank you. There's nothing further. Thank you very much. All right. Thank you very much, Mr. Nieman. You were appointed, I believe. And the court thanks you very much for your service to your client and to the court. And thanks as well to the government. We'll take the case under advisement.